ROGERS, J.
 

 Plaintiff sues for the recovery of $80,336.20, alleged to represent certain deductions for income and excess profit taxes made by defendant out of the profits due plaintiff under a contract between the parties.
 

 From a judgment rejecting its demand, plaintiff prosecutes the present appeal.
 

 Briefly stated, the facts are that on September 13, 1913, an agreement was entered into between the Messrs. Burguieres, representing the J. M. Burguiere Company, Limited, and the plaintiff company on the one hand, and Messrs. Sundberry & Dinkins on behalf of an operating company which they agreed to form, on the other hand. The Burguiere Company, however, was only a nominal party to the contract, and the real parties in interest are the plaintiff company and the defendant company, which was organized as the operating company to take over the rights and obligations of Messrs. Sundberry & Dinkins.
 

 Under the contract, the operating company was to purchase and to manufacture into lumber a large quantity of standing cypress timber, owned or controlled by the plaintiff company, and situated in the parishes of Lafourche and Terrebonne. The stipulation was for a fixed stumpage price for each 1,000 feet, and, as additional compensation, plaintiff was to receive one-half of the annual net profit of defendant’s business. It was further provided that, at the termination of the agreement, the stockholders of the defendant company were to receive the par value of their stock with the accrued dividends, and the remaining assets of the company were to be divided equally between the stockholders of the respective corporations.
 

 The question presented for determination is whether defendant acted correctly in treating as an expense the federal income and excess profit taxes which it paid, and in, deducting the amount of said taxes from its earnings for the purpose of arriving at the profits to be divided between the parties. The years involved are 1917, 1918, 1919, and 1920; and plaintiff is seeking judgment for one-half of said taxes charged against its account for each of said years.
 

 In the eighth paragraph of the contract, after stipulating (in addition -to the fixed price for stumpage) that the plaintiff company shall be paid one-half of the net profits of the defendant company, it is further provided that:
 

 “The books of the operating company are to be closed annually, at which time an audit shall be made by a certified public accountant selected by the Messrs. Burguieres” (plaintiff company), “and paid for by the operating company, and profits are to be distributed accordingly.”
 

 The defendant company commenced its operations in the year 1914, and its books were
 
 *807
 
 closed at the end of each of the years from 1914. to 1920, hoth inclusive. During said period they were also audited annually by a certified public accountant . selected by plaintiff, in accordance with the said agreement.
 

 Satisfactory settlements were had between the parties for the years 1914, 1915, and 1916, defendant paying plaintiff the agreed price for stumpage and one-half of the net profits realized from its business. In the years 1914 and 1915, defendant paid a federal corporation tax, and in the year 1916 it paid both a federal income tax and a federal corporation tax. All of these payments were charged to expenses, and deducted from defendant’s gross profit before accounting to plaintiff for its share of the net profits, to which no objection was offered by plaintiff.
 

 The annual audits for the years 1917 to 1920, both inclusive, showed plaintiff’s net profit for each of said years, exclusive of the payments for the federal income and excess profit taxes. In the boohs of the defendant company, however, one-half of the said taxes paid by defendant were charged to plaintiff, and deducted in establishing the amount due it under the contract.
 

 Defendant’s income tax returns showed, as its payment to plaintiff for stumpage, the fixed price agreed upon in the contract, together with one-half of its gross earnings for said years; and the tax was paid only on the remaining half of said earnings.
 

 Plaintiff contends that the income and excess profit taxes must be disregarded when considering the distribution of the net profits. It is pointed out that, at the time the contract was entered into, no income tax had been levied by Congress, and was not, therefore, in the contemplation of the parties, from which it must be presumed that the words “net profits” were used in their then accepted meaning. And it is argued that all payments made to plaintiff were for raw material, and constituted an expense of the business.
 

 All taxes are forced contributions for the support of government, and are necessary and unavoidable expenses in the conduct of any business. It is undisputed that the taxes exacted by the federal government for the years 1914, 1915, and 1916 were classed as expenses, and were deducted by the defendant company prior to the ascertainment of the net profits to be divided between plaintiff and defendant for said years. During this period, plaintiff bore one-half of these charges without objection or complaint. If the taxes paid for 1914, 1915, and 1916 were properly charged as legitimate items of expense, there would seem to be no good reason why the same course should not have been pursued with reference to the taxes for the years 1917 to 1920, inclusive. The construction which the parties by their acts, during the three years immediately following its execution, placed upon the contract, if it be not controlling, is entitled to great weight in ascertaining their understanding of its terms.
 

 Plaintiff, however, strenuously argues that the deduction of the income taxes for the years 1914 to 1916 as an expense was not a practical construction of the contract by plaintiff. The basis of the argument is that prior to the year 1917 the government permitted the taxpayer to include the taxes as an expense, but that since the act of Congress adopted'on October 3, 1917 (40 Stat. at Large 300, 338), income and excess profit taxes are not deductible as an expense in figuring present or subsequent profits and the consequent income and excess profits taxes.
 

 The argument, while persuasive, cannot prevail. The obligation of defendant to the government is wholly unrelated to its obligation to plaintiff. The rules formulated by the government for the collection of its taxes have no bearing on the contractual rights
 
 *809
 
 and obligations of tbe parties. The change in governmental policy could not affect the mutual interpretation which the contracting parties, by their conduct at a time unsuspicious, placed upon the provisions of the instrument.
 

 In the very able opinion filed by the district judge, the question of what constitutes the net profits of the business is discussed. As his views on the point are in accord with ours, we incorporate them herein as a part of our opinion. They are as follows, viz.:
 

 “The question therefore arises, what are ‘net profits’ of the business? The answer is, ‘The gain that accrues on an investment after deducting the loss and expenses of the business.’ 29 Cyc. 672. Judged by this definition there can be no denial that the tax in question was both a loss and expense to defendant company, as it had to be paid to the United States Government. It came out of the profits, and these profits cannot be said to be net until the tax was paid. While it is true that the tax paid the government is based upon the net profits, and the net profits must be ascertained before the tax can be fixed, still, according to the letter and spirit of the contract between the parties, it is evident that the tax so paid must be deducted before plaintiff is entitled to its 50 per cent, of the net profits. So far as the defendant is concerned, the income and excess profit taxes are just as much an expense in carrying on its business and are just as necessary to its continuation as are the payment of the state and parish taxes. Yet no one would have the temerity to hold that state and parish taxes are not legitimate expenses of defendant’s business, and would have to be •deducted as such before its net profits could be determined.
 

 “There can be little doubt that the contract between the parties contemplated an equal division of the profits of defendant company between its own stockholders and the plaintiff company. If there was any doubt of it, paragraph 17 of the contract would remove it. This paragraph provides that at the termination of the contract the remaining assets of defendant company, after paying its stockholders par value for their stock plus any accrued and unpaid dividends, shall be divided equally between the plaintiff company and the. stockholders of defendant company.”
 

 It has been suggested that the net profits of a corporation are only such profits as are available for distribution as dividends or to increase the surplus; and hence there can be no net profits for the stockholders, nor for the corporation, until all outsiders have received whatever may be due them. Without disputing the general application of the legal principle suggested, we do not find that it -has any bearing on the present issue. Under the terms of their contract, the plaintiff company and the defendant company, representing their respective stockholders, engaged in a joint enterprise, the profits from which were to be divided equally. It is immaterial that the defendant company was selected as the medium through which the expected profits were to be realized. The plaintiff company was not an outsider, but was an interested party directly concerned with the result of the joint venture. The language of the contract evidences a painstaking effort to secure absolute equality of benefits to the contracting parties. This could only be accomplished by deducting from the earnings of the joint enterprise all of the expenses thereof, including all taxes and charges imposed thereon, before dividing the net profits between the plaintiff' company and the defendant company.
 

 It is a further contention of plaintiff that defendant is estopped by its method of accounting, and by its income tax returns to the federal government, from contesting the correctness of plaintiff’s claim.
 

 Plaintiff was credited on defendant’s books with one-half of the net profits, and then charged back with one-half of the amount paid to the government for income and excess profits taxes. It is therefore urged on plaintiff’s behalf that the correctness of the entries allotting the profit cannot be questioned, although the right of the defendant to charge to plaintiff’s account its proportion of the taxes is vigorously contested.
 

 We do not think that an erroneous method
 
 *811
 
 of bookkeeping, or mistakes in the entries themselves, can bind defendant to pay more than is lawfully due plaintiff. The stipulations of the contract, and not the entries in defendant’s books, must be consulted in order to ascertain the respective legal rights and obligations of the contracting parties.
 

 Plaintiff urges that defendant is estopped to deny its claims because in its reports to the government it deducted as expenses one-half of the net profits due as additional compensation for stumpage. And it is said that defendant either owes plaintiff the amount thus credited to its account, or defendant has violated the law in not making the proper return of its net income.
 

 The verity of defendant’s income tax returns is a matter between the government and the defendant. In no sense are 'those returns determinative of the correctness, vel non, of the accounts between plaintiff and defendant. Plaintiff was not a party to them, was not bound thereby, and could not have been misled to its prejudice; and they created no estoppel so far as plaintiff is concerned.
 

 Plaintiff, in its brief, but not in its pleadings, has set up an alternative claim for one-half of the amount sued for. This demand is based on the entries in defendant’s books showing that the $80,336.23 which was deducted from the one-half of the profits credited to plaintiff as an expense, were carried into defendant’s surplus account for each year. Whatever may be the nature of the individual entries, the books as a whole show that during the four years in question defendant paid the government $160,672.46; one-half of this amount was charged to plaintiff, which, in effect, was thus made to pay one-half of the taxes, the other one-half being paid by defendant. Under plaintiff’s alternative demand, defendant’s stockholders would be required to bear three-fourths of this expense, while defendant would bear only one-fourth. There is nothing in the contract which authorizes us to render any such judgment.
 

 For the reasons assigned, our opinion is that the judgment appealed from is correct, and it is therefore affirmed.